Kenneth J. Katz
Nicole D. Grunfeld
KATZ MELINGER PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
Telephone: (212) 460-0047
Facsimile: (212) 428-6811
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHLEY ARIAS, | Civil Action No. |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| DEVERE USA, INC. and DEVERE GROUP LTD, | |
| Defendants. | |

Plaintiff Ashley Arias ("Ms. Arias" or "Plaintiff"), by her attorneys, Katz Melinger PLLC, complaining of Defendants deVere USA, Inc. ("deVere USA") and deVere Group Ltd. ("deVere Group") (collectively "deVere"), states, upon information and belief, as follows:

## I.   NATURE OF ACTION, JURISDICTION, AND VENUE

1.      This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA").

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and

Defendants conduct business through their employees, including Plaintiff, within this judicial district.

## II. PARTIES

1. At all relevant times, Plaintiff Ashley Arias was a resident of the State of New York or of California.

2. At all relevant times, Ms. Arias was employed by Defendants as a non-exempt covered employee within the meaning of the FLSA.

3. deVere USA is a domestic business corporation authorized to do business in New York. Its headquarters are located at 767 Third Avenue, 6th Floor, New York, New York 10017.

4. deVere Group is a foreign business corporation unauthorized to do business in New York. Its headquarters are located in Dubai, with an address at the 26th Floor, the H Hotel Office Tower, One Sheikh Zayed Road, P.O. Box 622201, Dubai, United Arab Emirates.

5. Upon information and belief, devere Group owns devere Group Limited GmbH, a Swiss corporation, which in turn owns fifty percent (50%) of deVere USA.

6. Upon information and belief, devere USA receives revenue through deVere Group on certain transactions.

7. Upon information and belief, portions of the revenue received by deVere USA from deVere Group are used to fund DeVere USA's administrative and operational expenses, and to fund bonuses to employees.

8. Upon information and belief, deVere Group refers to deVere USA as one of its worldwide offices, and lists it as such on the deVere Group website.

9. Upon information and belief, all deVere employees in the New York office, including Ms. Arias, were given email addresses ending in "devere-group.com".

10.     Upon information and belief, the terms of Ms. Arias's termination of employment with deVere were determined and communicated to her by Martin Byrne, in-house legal counsel to deVere Group.

11.     deVere Group and deVere USA are joint employers and are jointly and severally liable in this matter.

12.     At all relevant times, each of the Defendants was or is a business or enterprise engaged in interstate commerce and earning gross annual sales over $500,000.00.

13.     Each of the Defendants is a covered employer within the meaning of the FLSA and, at all relevant times, employed Plaintiff.

### III. FACTUAL BACKGROUND

14.     deVere is a global service firm that provides sales-related investment advice on a fee or commission basis through licensed retail-level investment advisors.

15.     These retail services consist of sales-related investment research and advice, and order execution, among other individual sales-related services.

16.     Upon information and belief, deVere does not offer its own financial products, but rather researches investment opportunities and financial products provided by other companies and presents these packages to their current and prospective clients.

17.     In that way, deVere merely acts as the "middle-man," synthesizing financial information and facilitating investment opportunities between its clients and other financial firms.

18.     From on or about May 19, 2014 to January 1, 2017, Ms. Arias was employed by deVere as a Coordinator.

19.     Coordinators were employees whose duties were set forth in uniform, company-wide policies and procedures.

20.     Ms. Arias was responsible for, *inter alia*, identifying and communicating with potential clients and generating sales.

21.      Ms. Arias worked in deVere's New York office from approximately May 19, 2014 to August 29, 2014, and then again from approximately September 1, 2015 until January 1, 2017.

22.     Ms. Arias worked in deVere's San Francisco office from approximately September 1, 2014 to August 31, 2015.

23.     Throughout her employment with deVere and regardless of whether she was in the New York or San Francisco office, Ms. Arias regularly worked in excess of forty (40) hours per week with deVere's knowledge and approval.

24.     During her initial period in the New York office from May 19, 2014 to August 29, 2014, as well as the first year after her return to New York, Ms. Arias worked in the office from approximately 8:00 A.M. to 6:00 P.M. each weekday, while taking approximately fifteen to twenty minutes for lunch, for an average of fifty-six and one-half (56.5) hours worked per week.

25.     In addition, Ms. Arias regularly handled telephone calls, emails, research and investigation of potential clients, and other work for approximately two (2) hours each day before or after work and for no less than five (5) hours on the weekends, totaling an additional seven and one-half (7.5) hours, on average, of work each week.

26.     As a result, Ms. Arias worked an average total of sixty-three and one-half (63.5) hours per week during her employment by deVere in New York from May 19, 2014 through August 29, 2014, as well as from September 2015 through September 2016.

27.   While working in deVere's San Francisco office from September 1, 2014 to August 31, 2015, Ms. Arias similarly worked an average of sixty-three and one-half (63.5) hours per week, including fifty-six and one-half (56.5) hours in the office and approximately seven and one-half (7.5) hours at home.

28.   Finally, during her time at the New York office from September 2016 through the end of her employment in January 2017, Ms. Arias worked an average of approximately fifty-eight and one-half (58.5) hours per week.

29.   As a Coordinator, Ms. Arias earned an annual salary, initially $24,000.00 and increasing with time, plus a commission on sales.

30.   According to deVere's policies, the salary was paid as a draw (also referred to as a "monthly fee"). It was recoverable by deVere and was not guaranteed to Ms. Arias, and accordingly did not qualify as a bona-fide salary as defined by the FLSA.

31.   All compensation earned by Ms. Arias during her employment with deVere was paid not more frequently than monthly.

32.   If Ms. Arias failed to earn a monthly commission equal to or in excess of her monthly draw, she would receive only her monthly draw as payment for the month.

33.   Further, the monthly fee was recoupable by deVere, and any amounts not offset by commissions would be carried forward as a deficit against Ms. Arias. (See attached hereto as Exhibit 1 an email from Martin Byrne, in-house counsel to deVere Group, regarding Ms. Arais's "debt" to deVere.)

34.   This deficit itself would carry forward and grow every month that commissions did not exceed the monthly draw.

35.   At no point prior to her commencement of employment was Ms. Arias notified that amounts earned by her would be recoupable by deVere; rather, she was falsely told that she would be earning a salary and commission.

36.   Since Ms. Arias's "monthly fee" was paid monthly and not biweekly, and since it was subject to reduction and not guaranteed at a fixed amount every week, deVere's uniformly paid compensation plan for Ms. Arias fails the FLSA's salary basis test under the white collar and highly compensated employee exemptions.

37.   Additionally, since this deficit could be carried forward from month to month and was capable of creating negative premiums which exceeded Ms. Arias's monthly fee, deVere's uniformly paid compensation plan for Ms. Arias fails the FLSA's salary basis test under the white collar and highly compensated employee exemptions.

38.   As part of its regular business practice, deVere intentionally, willfully, and repeatedly harmed Ms. Arias by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay Ms. Arias the applicable overtime rate for all time worked in excess of forty hours per week under the FLSA.

39.   deVere has engaged in its unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

40.   deVere's unlawful conduct has been intentional, willful, and in bad faith and has caused significant damages to Ms. Arias.

### SEPARATION AGREEMENT – EFFECT ON WAGE CLAIMS

41.   On or around January 7, 2017, Ms. Arias ended her employment with deVere.

42.   deVere offered to pay Ms. Arias $2,386.37 as well as certain pending commissions only if she agreed to sign a waiver and release of claims against the company (the "Agreement").

43.   The Agreement included a section entitled "General Release" in which Ms. Arias purported to release all claims arising out of or relating to her employment with deVere, including wage claims.

44.   Ms. Arias was not advised to consult with an attorney prior to signing the Agreement, nor did she do so.

45.   Ms. Arias signed the Agreement and subsequently received payment under the Agreement.

46.   However, the Second Circuit has held in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) that a settlement agreement purporting to release claims under the FLSA must be approved by the Department of Labor or by a court in order to validly waive such claims.

47.   The *Cheeks* Court set out several factors to consider in deciding whether to approve an agreement waiving FLSA claims in light of the broad remedial purpose of the statute.

48.   These factors include, *inter alia*: (i) whether the agreement contains confidentiality restrictions; (ii) whether the agreement contains overbroad general releases; (iii) whether the releasor understands their rights under the FLSA; and (iv) whether the releasor was adequately represented by counsel before signing.

49.   The Agreement does not represent an arms-length negotiation between Ms. Arias and deVere, nor does it constitute a knowing waiver of claims pursuant to the FLSA by Ms. Arias.

50.    The purported release of claims within the Agreement is overbroad, including "any and all claims, charges, demands, causes of action, fees, liabilities, obligations, expenses or otherwise (whether federal, state or local, accrued or not accrued, direct or contingent, now known or unknown) that Employee … has … against the Company or the Company's Releasees, arising out of or relating to Employee's employment by the Company, her separation of employment, or any other matter."

51.    The release goes on to state that it includes

"any and all claims for unpaid or lost compensation, attorneys' fees, costs, wages, commissions, bonus payments, incentive payments or rewards, paid time off, holiday pay, vacation pay, sick pay, expense reimbursement, or compensatory time, back pay, front pay, breach of personnel policies or employee handbooks, discrimination or harassment based upon race, color, national origin, ancestry, religion, marital status, sex, sexual orientation, citizenship status, leave of absence, medical condition, disability or handicap (as defined by the Americans with Disabilities Act, or any other state or local law), age or any other unlawful discrimination under any federal, state or local law, statute or ordinance, or law, code, statute, rule or regulation of any other country or jurisdiction, including, without limitation Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, the National Labor Relations Act, as amended, 42 U.S.C. § 1981, the Employee Retirement Income Security Act of 1974, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Civil Rights Act of 1991, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the California Labor Code, the California Government Code, the California Business and Professions Code and the California Wage Orders; the Worker Adjustment and Retraining Notification Act, the New York State Labor Law, the New York City Administrative Code, the New York State and City Human Rights Laws, the New York Equal Pay Law, and any other federal, state and local human rights, fair employment or other law, breach of implied or express contract, breach of the covenant of good faith and fair dealing, breach of promise, misrepresentation, negligence, fraud, estoppel, slander, defamation, intentional or negligent infliction of emotional distress, torts, mental, physical or emotional injury, violation of public policy, interference with

8

contractual or business relationships, wrongful or constructive discharge, any employment-related tort or any claim under federal, state, territorial, or local law, rule, regulation, statute or ordinance relating to employment, or any claim similar to any of the foregoing, any equitable relief, and any and all claims for damages of any nature or kind arising in connection with any of the foregoing or otherwise, including, without limitation, all actual, special, liquidated, compensatory, punitive and all other kinds of damages recognized at law or in equity, and any claim for attorneys' fees, expenses or costs, and interest, based upon any claims or conduct, acts or omissions that Employee has, ever had or may hereafter have, whether known or unknown, suspected or unsuspected, from the beginning of time up to and including the date Employee signs this Agreement, provided however, that the foregoing release does not waive claims that may arise after Employee signs this Agreement and it does not include the release of claims which a law may prohibit the release of."

52.   In what may be recognition of the fact that such an agreement cannot validly waive claims under the FLSA, the list of released claims conspicuously omits the FLSA itself, despite including several state wage and hour laws.

53.   The Agreement also includes a strict, non-mutual confidentiality clause.

54.   Ms. Arias was not represented by an attorney when she signed the Agreement, and she did not negotiate its terms.

55.   Instead, the Agreement was presented to her as a "take it or leave it" proposition that she could either sign or refuse, but not negotiate.

56.   Furthermore, Ms. Arias was not aware that she had FLSA claims or that she was potentially waiving such claims by signing the Agreement.

57.   In short, the Agreement does not comport with any of the factors laid out in *Cheeks* to determine whether an agreement should be approved in court.

58.   Accordingly, Ms. Arias did not validly waive her FLSA claims and for this reason appropriately brings them in court.

## SEPARATION AGREEMENT – EFFECT ON ARBITRATION AGREEMENT

59.     Ms. Arias's employment agreement, like the employment agreements of all deVere employees, contained an arbitration clause in which the parties agreed to resolve all disputes between them in binding arbitration.

60.     However, the employment agreement was superseded by the subsequently signed Agreement.

61.     Section 14 of the Agreement, entitled "Entire Agreement: Modification" states that the Agreement "fully supersedes and cancels any and all prior or contemporaneous agreements or understandings between Employee and the Company and Employee and the Company's Releasees, written or oral, except that any prior agreements regarding confidentiality shall remain in full force and effect."

62.     The Agreement does not contain an arbitration provision.

63.     Accordingly, Ms. Arias appropriately brings this action in federal court.

## COUNT I
(Overtime Violations under the FLSA)

64.     Plaintiff repeats and realleges all prior allegations set forth above.

65.     Pursuant to the applicable provisions of FLSA, 29 U.S.C. § 207, Ms. Arias was entitled to overtime compensation of one and one-half times her regular hourly rate for all hours worked in excess of forty hours per week.

66.     Throughout the relevant time period, Ms. Arias regularly worked in excess of forty hours per week during her employment with deVere.

67.     Throughout the relevant time period, deVere knowingly and willfully failed to pay Ms. Arias overtime wages of one and one-half times her regular hourly rate for each hour worked in excess of forty hours in a week.

10

68.     As a result of deVere's violations of the law and failure to pay Ms. Arias the required overtime wages, Ms. Arias has been damaged and is entitled to recover from deVere all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

69.     As deVere did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Ms. Arias is entitled to liquidated damages.

70.     An award should be entered in favor of Ms. Arias and against deVere on Count I in the amount of her unpaid overtime wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as the Court deems just and proper.

### IV. RELIEF REQUESTED

a)      on the First Cause of Action, for all overtime wages due to Plaintiff, an additional award of one hundred percent of all wages due, all reasonable attorneys' fees, costs and interest, in an amount to be determined by this Court;

b)      Interest;

c)      Costs and disbursements; and

d)      Such other and further relief as is just and proper.

Dated:      New York, New York
            March 2, 2018

                                    */Nicole Grunfeld/*
                                    Nicole D. Grunfeld
                                    Attorney for Plaintiff
                                    Katz Melinger PLLC
                                    280 Madison Avenue, Suite 600
                                    New York, New York 10016
                                    Telephone: 212.460.0047
                                    Facsimile: 212.428.6811
                                    ndgrunfeld@katzmelinger.com