Settlement Agreement and FLSA Release

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE (this "Agreement") is made and entered into by and between Ashley Arias ("Plaintiff"), on the one hand, and Brite Advisors USA, Inc. (formerly known as deVere USA, Inc.), a U.S. Corporation (the "Company"), on the other hand, on or as of the date of signature of the last signatory to this Agreement ("Effective Date"). Plaintiff and the Company may be referred to herein individually as a "Party" or collectively as the "Parties."

### WITNESSETH

WHEREAS, Plaintiff was employed by the Company beginning on or about May 20, 2014 pursuant to written agreements dated on or about May 20, 2014, June 1, 2015, October 1, 2015 ("October 2015 Agreement"), and April 1, 2016 (all collectively, "Employment Agreements");

WHEREAS, Plaintiff resigned from her employment with the Company effective on or about January 5, 2017;

WHEREAS, Plaintiff and the Company entered into a Confidential Separation and General Release on or about February 1, 2017 ("Separation Agreement");

WHEREAS, Plaintiff has asserted against the Company and its former affiliate, deVere Group Ltd., claims and causes of action seeking alleged unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA"), as set forth in the complaint filed on or about March 2, 2018 in the United States District Court, Southern District of New York, Case No. 1:18-cv-01913-LTS-DCF ("Complaint");

WHEREAS, Plaintiff has asserted that her claims in the Complaint arising under the FLSA were not validly released by the Separation Agreement;

WHEREAS, it is the desire of Plaintiff and the Company to fully, completely, and permanently resolve all claims between them; and

NOW, THEREFORE, for and in consideration of the promises and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which the Parties hereby acknowledge, the Parties hereby agree as follows:

1. General Release by Plaintiff.

    (a)     Plaintiff, individually for herself and on behalf of her spouse, heirs, agents, attorneys, successors and assigns, and her other representatives, or anyone who has or obtains any legal rights or claims through Plaintiff, and for her or their heirs, executors or administrators, legal successors and assigns and their respective successors and assigns ("Plaintiff's Releasors"), hereby releases, dismisses, and forever discharges, to the maximum extent permitted by law, the Company and its affiliates, shareholders, successors and assigns,

Settlement Agreement and Mutual General Release

and each and all of the Company's employees, directors, officers, and shareholders who served in those capacities during Plaintiff's employment with the Company, whether as individuals or in their official capacities, and their respective legal successors and assigns (hereinafter all releasees set forth above collectively referred to as "Releasees"), from any and all claims, charges, demands, causes of action, fees, liabilities, obligations, expenses or otherwise (whether federal, state or local, accrued or not accrued, direct or contingent, now known or unknown, suspected or unsuspected) that Plaintiff or Plaintiff's Releasors has or may hereafter have (either in her or their own right or as a result of direct or indirect assignments or purported assignment(s) thereof) against the Company or the Releasees, arising out of or relating to the Complaint, the Employment Agreements, the Separation Agreement, Plaintiff's employment by the Company or with any Releasees, or separation therefrom, or any other matter. The release in this Paragraph 1(a) shall include any and all claims for damages of any nature or kind, such as, without limitation, all actual, special, liquidated, compensatory, punitive, or any other kind of damages recognized at law or in equity, or any claim for attorneys' fees, expenses, costs, or interest, which relate to or arise out of any matter whatsoever, including, without limitation, the Complaint, the Employment Agreement, the Separation Agreement, or Plaintiff's employment by the Company or with any Releasees or her separation therefrom, whether known or unknown, suspected or unsuspected, from the beginning of time up to and including the date of this Agreement. Plaintiff may later discover facts different from or in addition to those she now knows or believes to be true regarding the matters released or described in the Complaint, the Employment Agreement, the Separation Agreement, this Agreement, Plaintiff's employment by the Company or any Releasees or her separation therefrom, or any other matter and even so Plaintiff agrees that the release in Paragraph 1(a) of this Agreement shall remain effective in all respects notwithstanding any later discovery of any different or additional facts.

(b)     It is expressly understood by Plaintiff that this release by Plaintiff in Paragraph 1 herein shall include any and all claims for unpaid or lost compensation, attorneys' fees, costs, wages, commissions, bonus payments, incentive payments or rewards, paid time off, holiday pay, vacation pay, sick pay, expense reimbursement, or compensatory time, back pay, front pay, breach of personnel policies or employee handbooks, discrimination or harassment based upon race, color, national origin, ancestry, religion, marital status, sex, sexual orientation, citizenship status, leave of absence, medical condition, disability or handicap (as defined by the Americans with Disabilities Act, or any other state or local law), age or any other unlawful discrimination under any federal, state or local law, statute or ordinance, or law, code, statute, rule or regulation of any other country or jurisdiction, including, without limitation, any claim for unpaid wages or any other claims arising under the FLSA, the California Labor Code, the California Business & Professions Code, the Bahamas Employment Act, the California Fair Employment and Housing Act ("FEHA"), the California Government Code, the New York State Labor Law ("NYSLL"), the Florida Minimum Wage Act ("FMWA"), Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, the National Labor Relations Act, as amended, 42 U.S.C. § 1981, the Employee Retirement Income Security Act of 1974, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Civil Rights Act of 1991, the Worker Adjustment and Retraining Notification Act, the New York City Administrative Code, the Family and Medical Leave Act, the New York State and City Human Rights Laws, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the New York Equal Pay Law, the Florida Civil

Settlement Agreement and Mutual General Release

Rights Act, the Florida Private Sector WhistleBlower Act, and any other federal, state, or local human rights, fair employment or other law, breach of implied or express contract, breach of the covenant of good faith and fair dealing, breach of promise, misrepresentation, negligence, fraud, estoppel, slander, defamation, intentional or negligent infliction of emotional distress, torts, mental, physical or emotional injury, violation of public policy, interference with contractual or business relationships, wrongful or constructive discharge, any employment-related tort or any claim under federal, state, territorial, or local law, statute or ordinance relating to employment, or any claim similar to any of the foregoing, any and all claims regarding, relating, or referring to any filings with or submitted to FINRA or the U.S. Securities and Exchange Commission, any equitable relief, or any and all claims for damages of any nature or kind arising in connection with any of the foregoing or otherwise, including, without limitation, all actual, special, liquidated, compensatory, punitive, and all other kinds of damages recognized at law or in equity, and any claim for attorneys' fees, expenses, or costs, and interest thereunder, based upon any claims or conduct, acts, or omissions that Plaintiff has, ever had or may hereafter have, whether known or unknown, suspected or unsuspected, accrued or not accrued, from the beginning of time up to the Effective Date.

(c) Plaintiff agrees that, following her receipt of the Settlement Benefits, as hereinafter defined, and following the funds from the Settlement Benefits clearing the account of the Company or its third-party payor, she and her counsel shall promptly file a stipulation of dismissal with prejudice of the Complaint and will take any steps that are necessary to effectuate the dismissal of the Complaint with prejudice. To the extent that any such steps are in writing, Plaintiff shall immediately provide the Company's counsel with a copy of any document relating to such dismissal with prejudice.

2. <u>Waiver of California Civil Code section 1542</u>. Plaintiff agrees that the release set forth in Paragraph 1 herein is a general release, and expressly waives any benefits that California Civil Code section 1542 or any other laws, legal decisions and/or legal principles of similar effect might provide to Plaintiff now or in the future. Plaintiff further agrees that the release described herein extends to all claims of every kind and character that would otherwise come within the scope of the released claims, whether or not claimed, known, anticipated, or suspected by her. Plaintiff certifies that she has read and understands the provisions of California Civil Code section 1542 which reads as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

Plaintiff understands that she may hereafter discover facts different from what she now believes to be true, which if known, could have materially affected this release in Paragraph 1, but she nevertheless waives and releases any claims or rights based on different or additional facts, and agrees that this Agreement shall be and shall remain, in all respects, effective and not subject to termination or rescission by reason of any such difference in facts. Plaintiff agrees that this

Settlement Agreement and Mutual General Release

waiver of rights is an essential and material term of this Agreement and, without such waiver, this Agreement would not have been entered into.

3. **General Release by Company.**

The Company hereby releases, dismisses, and forever discharges, to the maximum extent permitted by law, Plaintiff from any and all claims, charges, demands, causes of action, fees, liabilities, obligations, expenses, or otherwise (whether federal, state or local, accrued or not accrued, direct or contingent, now known or unknown, suspected or unsuspected) that the Company has or may hereafter have (either in its own right or as a result of direct or indirect assignments or purported assignment(s) thereof) against the Plaintiff arising out of or relating to the Complaint, the Employment Agreement, the Separation Agreement, Plaintiff's employment by the Company or separation therefrom, or any other matter. The release in Paragraph 3 shall include any and all claims for damages of any nature or kind, such as, without limitation, all actual, special, liquidated, compensatory, punitive, or any other kind of damages recognized at law or in equity, or any claim for attorneys' fees, expenses, costs, or interest, which relate to or arise out of any matter whatsoever, including, without limitation, the Complaint, the Employment Agreement, the Separation Agreement, or Plaintiff's employment by the Company or her separation therefrom from the beginning of time up to and including the Effective Date. The Company may later discover facts different from or in addition to those it now knows or believes to be true regarding the matters released or described in the Complaint, the Employment Agreement, the Separation Agreement, this Agreement, Plaintiff's employment by the Company or her separation therefrom, or any other matter and, even so, the Company agrees that the release in Paragraph 3 of this Agreement shall remain effective in all respects notwithstanding any later discovery of any different or additional facts.

4. **Settlement Benefits.** Within ten (10) business days after issuance of an order by the Court approving this settlement and this Agreement, the Company shall pay to Plaintiff the benefits set forth below (the "Settlement Benefits"):

(a) The total sum of Forty-Seven Thousand Five Hundred and 0/100 US Dollars ($47,500.00) paid as follows:

(1) The total amount of Thirty Thousand Seven Hundred and Eighty-Four and 94/100 Dollars ($30,784.94), which represents consideration for Plaintiff's waiver and release as set forth in this Agreement, will be made payable to "Ashley Arias" ("Plaintiff Payment").

i) From the Plaintiff Payment, the Company will withhold appropriate tax or other withholdings from Fifteen Thousand Three Hundred and Ninety-Two and 47/100 Dollars ($15,392.47) representing unpaid wages. The Company will report this payment to the Internal Revenue Service, and will request that ADP or a similar company issue to Employee a W-2 tax form

Settlement Agreement and Mutual General Release

        ii) From the Plaintiff Payment, the Company will pay Fifteen Thousand Three Hundred and Ninety-Two and 47/100 Dollars ($15,392.47) representing liquidated damages, and issue to Plaintiff a Form 1099. The Company will report this payment to the Internal Revenue Service, and will request that ADP or a similar company issue to Employee a Form 1099.

    (2) The total amount of Sixteen Thousand Seven Hundred and Fifteen and 06/100 Dollars ($16,715.06), which represents attorneys' fees and costs, will be made payable to "Katz Melinger PLLC." The Company will report this payment to the Internal Revenue Service, and will request that ADP or a similar company issue a Form 1099 to Katz Melinger PLLC.

    (3) The Settlement Benefits shall be paid via check and mailed to Katz Melinger PLLC, 280 Madison Avenue, Suite 600, New York, NY 10016.

    (b) Plaintiff acknowledges and agrees that the Company does not have any legal obligation to provide Settlement Benefits to her other than pursuant to this Agreement. Plaintiff also acknowledges and agrees that her acceptance of the Settlement Benefits and attendant obligations as described in this Agreement is in consideration of the promises and undertakings of the Company as set forth in this Agreement.

    (c) Plaintiff and Katz Melinger PLLC agree to provide the Company with respective executed and completed Forms W-4 and W-9 and acknowledge that the Company has no duty to provide the Settlement Benefits until the Company is in receipt of these executed forms.

    5. Other Agreements.

    (a) Plaintiff hereby represents and warrants that she (i) has not assigned or transferred to any person any portion of any claim that is waived, released, or discharged herein, (ii) does not have or know of any outstanding claims against the Company and/or its current or former shareholders and/or affiliates other than those released herein, and (iii) does not reserve any claims against the Company and/or its current or former shareholders and/or affiliates.

    (b) This Agreement and compliance hereunder shall not be construed as an admission by the Company, or any officer, director, employee, shareholder or agent of the Company, of any liability or wrongdoing whatsoever. The Company specifically disclaims any wrongdoing and disclaims any liability to Plaintiff for any alleged violation of her rights under any laws, including any violation under the FLSA or any constitutional, statutory, common law, or contractual rights. Plaintiff shall not be considered a prevailing Party for any purpose.

    (c) The Parties acknowledge that this Agreement, the compromise and settlement evidenced thereby, and any evidence relating thereto, each and all: (i) shall never be admissible as evidence against the Company in any present or future suit, claim, proceeding, or otherwise of any nature, except as necessary to enforce the terms of this Agreement and the instruments, documents, and agreements referenced herein; (ii) but may be asserted by and introduced as

Settlement Agreement and Mutual General Release

evidence for the Company as an absolute and final defense and bar to any claim released herein in any present or future suit, proceeding, or otherwise of any nature.

(d) The Parties agree that the consideration recited herein is the only consideration given or agreed to be given for this Agreement and the amount of such consideration is contractual and not a mere recital.

(e) Plaintiff understands and agrees that she is responsible for payment of any taxes that she is required to pay to the City of New York, State of New York, the United States Government, or any other government entity as a result of the Settlement Benefits. Plaintiff acknowledges that no representations regarding the tax consequences of the Settlement Benefits have been made to her by the Company or the Company's counsel.

(f) Plaintiff understands and agrees that she is responsible for payment of her own attorneys' fees and costs incurred in connection with this matter and the settlement thereof, other than specifically referenced herein. Plaintiff further understands and agrees that the Settlement Benefits she will receive or that are being made on her behalf under this Agreement include any and all claims for her attorneys' fees, costs and expenses, and that the release under this Agreement includes any and all of Plaintiff's claims for attorneys' fees, costs and expenses.

(g) Plaintiff acknowledges that she has carefully read and fully understands the provisions of this Agreement, including the release provisions set forth in Section 1 and Section 2 herein, that she has been given sufficient time to consider the terms of this Agreement, that she has had sufficient time to consult with her counsel, and that she enters into this Agreement knowingly and voluntarily and not as a result of any pressure, coercion, or duress. Plaintiff acknowledges that this Agreement represents a fair and reasonable compromise of disputed issues. By executing this Agreement, Plaintiff acknowledges that she has made her own investigation of the facts and is relying solely upon her own knowledge and the advice of her own legal counsel, and knowingly waives any claim that this Agreement was induced by any misrepresentation or nondisclosure or any right to rescind or avoid this Agreement based upon presently existing facts, known or unknown. The Parties stipulate that each Party is relying upon these representations and warranties in entering into this Agreement, and that the representations and warranties herein shall survive the execution of this Agreement.

(h) Each Party has had the opportunity to revise, comment upon, and draft this Agreement. Accordingly, the Parties agree that no rule of construction shall apply against any Party or in favor of any Party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of the other.

6. Miscellaneous.

(a) The Parties intend that the releases contained herein be as broad as permitted by law.

Settlement Agreement and Mutual General Release

(b) This Agreement, and the rights and obligations of the Parties, shall be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York without reference to principles of conflicts of law. Any and all complaints, actions, or otherwise relating to this Agreement shall be filed in the federal and/or state courts located in the County of New York, State of New York.

(c) Each Party hereby irrevocably and unconditionally waives any right it may have to a trial by jury for the adjudication of any dispute arising out of or relating to this Agreement. Each Party certifies and acknowledges that (i) each Party understands and has considered the implications of this waiver, (ii) each Party makes this waiver voluntarily, and (iii) each Party has been induced to enter into this Agreement by, among other things, the mutual waivers in this section.

(d) If any provision of this Agreement is determined by a court of competent jurisdiction to be contrary to, prohibited by, or invalid under applicable law or regulation, except for and excluding the release provisions in Section 1 and Section 2 herein, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder hereof shall not be invalidated thereby and shall be given full force and effect so far as possible; provided however, that in the event that the releases provided in Section 1 and Section 2 herein are found to be invalid or unenforceable, the Parties agree to promptly execute valid and binding releases of comparable scope. If any provision of this Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning which renders it valid and enforceable. The failure or delay of any Party at any time to require performance by another Party of any provision of this Agreement, even if known, shall not affect the right of such Party to require performance of that provision or to exercise any such right, power or remedy hereunder. Any waiver by any Party of any breach of any provision of this Agreement should not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement. No notice to or demand on any Party in any case shall, of itself, entitle such Party to any other or further notice or demand in similar or other circumstances.

(e) This Agreement constitutes and represents the complete and entire agreement and understanding between the Parties regarding the subject matter hereof and supersedes and replaces any prior negotiations or proposed agreements, written or oral, and any and all prior or contemporaneous agreements, arrangements or understandings, whether oral or written, express or implied, except that any prior agreements regarding Plaintiff's confidentiality commitments to the Company shall remain in full force and effect. Each of the Parties acknowledges that no other Party, nor agent of any other Party, has made any statements, understandings, agreements, promises, representations, or warranties whatsoever, express or implied, not contained herein to induce it to execute this Agreement. The Parties expressly agree that any and all obligations, commitments, or otherwise set forth in each section of Section 5 (Indemnity Obligations) of the October 2015 Agreement are terminated and waived in all respects and do not survive the termination of the October 2015 Agreement. The Parties further agree that any rights Employee may have under any corporate document (e.g., bylaws, articles of incorporation) of the

Settlement Agreement and Mutual General Release

Company are hereby terminated and waived in all respects, to the extent that such rights may be waivable or terminated by contract.

(f) This Agreement and the terms thereunder may not be modified, amended, or altered except by a subsequent writing to be signed by each Party hereto. This Agreement and the releases and covenants herein shall be binding upon, and shall inure to the benefit of, Plaintiff and her heirs, executors, administrators, or other legal representatives, and the Company and its current and former shareholders and affiliates and each and all of their respective successors and assigns. This Agreement is binding upon and intended for the sole benefit of the Parties. To that end, the Parties expressly agree and declare that there are no third-party beneficiaries to this Agreement, intended or unintended, direct or indirect.

(g) The representations and warranties set forth herein shall survive the execution and delivery of this Agreement.

(h) Each Party hereto shall bear her or its own direct and indirect expenses incurred in connection with the negotiation and preparation of this Agreement and the consummation and performance of the transactions contemplated hereby.

(i) This Agreement may be executed in separate counterparts, any one of which need not contain signatures of more than one Party, but all of which taken together will constitute one and the same agreement. Signatures transmitted by facsimile machine or electronically in Portable Document Format (PDF) or similar software shall be treated as originals for purposes of this Agreement.

SIGNATURES ON FOLLOWING PAGE

Settlement Agreement and Mutual General Release

IN WITNESS WHEREOF, the Parties have executed this Agreement or caused the same to be executed by their duly authorized corporate officers, all as of the date written below.

Ashley Arias

Dated: 4/1/2019

_____
Ashley Arias

Brite Advisors USA, Inc.

Dated: 4/19/2019

By: _____
MAB Name: ~~Nigel Gregory~~ MARTINA BYRNE
MAB Title: ~~Chief Executive Officer~~
Authorized Representative